[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
By complaint dated July 16, 1999 the plaintiff, Rita Nigro commenced this action seeking a dissolution of marriage on the grounds of irretrievable breakdown and other relief. The defendant appeared through counsel and filed a cross-complaint dated November 19, 1999. Both parties appeared with counsel on June 15, 1999 and June 16, 1999 and the plaintiff proceeded on her complaint. The parties presented testimony and introduced documentary evidence. The court, after hearing the testimony and reviewing the exhibits, makes the following findings of fact.
The plaintiff, whose maiden name was Rita Elaine Pepper and whose name at the time of the marriage was Rita Elaine Rousseau, married the defendant on July 17, 1993 in Windsor, Connecticut. She has resided continuously in the State of Connecticut for at least twelve months next preceding the filing of the complaint. All statutory stays have expired. There are no minor children issue of the marriage. The court further finds that neither party have been recipients of any aid from the State of Connecticut or municipality thereof.
The plaintiff is 53 years of age. She is in good health. She presently resides at 9 North Street in Enfield, Connecticut. The parties separated in July of 1999. Although she attended high school the plaintiff did not CT Page 15285 graduate although she was encouraged to do so by her husband. Further, she has not received her GED. She is presently employed full-time and earns approximately $16,000 per year. She has held various positions since the date of the marriage and her maximum weekly income was $440 per week. The court finds that her present earning capacity is $440 per week. Her opportunity for substantial increases in her earnings are limited.
The defendant is 40 years of age and in reasonably good health although he does suffer from anxiety and stress and on occasion has panic attacks. He is taking the medication Prozac. He currently resides in the marital residence at 410 Elmwood Drive in Windsor Locks, Connecticut. He has had one year of college and studied aircraft maintenance technology. He is currently employed as a power plant technician at the Pratt 
Whitney division of United Technologies Corporation. He has been employed with Pratt Whitney since 1980. His current base annual salary is $44,657.60. During the first thirty-four weeks of the year 2000 his average weekly income amounted to $1,131 per week. This included a substantial amount of overtime which, according to the plaintiff's credible testimony has been reduced substantially, especially in more recent months. The court finds that his earning capacity is his average weekly earnings for the first seven months of the year 2000 i.e. $1,131 per week. If he remains in his present employment his earnings are likely to increase over the years before his retirement.
There was no evidence of any physical abuse or any substantial mental abuse during the marriage. The parties lived together for several years before they got married. The plaintiff has four children from her first marriage, two of whom lived with the parties during the early years of their living together and their marriage. Although there was conflicting testimony as to the financial contributions of each of the parties, the defendant contributed to the support of two of the plaintiff's children and contributed most of the financial support for the parties. The plaintiff used most of her funds on the support of her children.
Before they got married the plaintiff sold a piece of property in Massachusetts and, as a result, sustained a $19,000 IRS debt. At the time the defendant owned the marital residence and borrowed monies to pay off the plaintiff's IRS debt. She thereafter filed bankruptcy and argues that the defendant's debt has been eliminated and discharged in bankruptcy. In addition, the plaintiff argues that she used some of the proceeds from the sale of the Massachusetts property for the defendant as well as herself and her children. The court declines to consider the financial transactions between the parties before they got married except to the extent that there are any claims for premarital assets. CT Page 15286
Over a period of time the age differential loomed larger in causing problems between the parties. Each of the parties had different lifestyles and had different friends. In July of 1999 the plaintiff hired a private investigator who documented that the defendant was having a relationship with another woman. Immediately following that documentation the plaintiff filed for a dissolution of her marriage. The girlfriend testified that she had a relationship with the defendant but it did not start until shortly before or at the same time as the commencement of the instant action.
Based upon the testimony of the parties and their witnesses the court finds that each of the parties were responsible for the breakdown of the marriage and that the discovery of the girlfriend in July of 1999 was the straw that "broke the camel's back".
The defendant's financial affidavit shows a negative amount for the value of all of his assets. The deficit is principally connected with the valuation of the marital residence. The defendant offered the testimony of a licensed appraiser who substantiated his $115,000 valuation. Although the court agrees with the $115,000 valuation for the marital residence, it is disinclined to believe the negative values for the 1995 Chevrolet Blazer and the 1994 Palomino Camper. Further, the valuation ascribed to the 1998 Harley Davidson by the plaintiff appears to be low. However, even considering the values used by the plaintiff there is little doubt that he has a substantial negative equity situation with respect to his assets.
Prior to the commencement of trial the plaintiff's counsel made a claim of $640 for an alimony arrearage existing as of that date. The court finds that the defendant was in arrears that amount as of the date of trial and orders the defendant to make payment to the plaintiff of said amount within thirty days from the date of this decision.
The court has considered all of the statutory factors set out in Connecticut General Statutes §§ 46b-81, 46b-82 and 46b-62 and other pertinent statutes, earnings and earning capacity differentials, causes for the breakdown of the marriage and the consequences of the financial awards set forth below. Judgment shall enter dissolving the marriage of the parties on the ground of irretrievable breakdown. It is further ordered that:
1. Alimony
The defendant shall pay to the plaintiff periodic alimony of $150 per week for three years. The $150 per week order is retroactive to August 11, 1999 and the defendant shall receive credit for any pendente lite CT Page 15287 alimony payments he has made since that date. Commencing thirty days after judgment the defendant shall commence the $150 per week and pay $50 per week on any arrearage existing as of that time. The alimony shall be nonmodifiable as to both term and amount. The payments shall be deductible by the defendant and includible by the plaintiff for income tax purposes. Alimony shall terminate upon the death of either party, the remarriage of the plaintiff or the plaintiff living together with an unrelated adult male.
2. Medical Insurance and Unreimbursed Expenses
Each party shall be responsible for their own health insurance and unreimbursed medical expenses.
3. Property Division
a. Marital Residence
The plaintiff shall transfer to the defendant all of her right, title and interest in and to the marital residence located at 410 Elmwood Drive, Windsor Locks, Connecticut. The defendant shall hold the plaintiff harmless from any and all encumbrances currently existing on the property including the first and second mortgages.
b. Automobiles
The defendant shall transfer to the plaintiff all of his right, title and interest in and to the 1995 Pontiac Grand Am. The plaintiff shall hold the defendant harmless from any and all outstanding liens or encumbrances against said automobile. All other automobiles, including the defendant's motorcycle, shall be retained by the defendant.
c. Personal Property
As of the date of this decision the parties have already divided their personal property. If the parties are in disagreement as to the division that they have effectuated then the court shall retain jurisdiction to make such division.
 d. Bank Accounts, Stocks, Bonds, Mutual Funds, Cash Value of Life Insurance, Deferred Compensation Plans
The parties shall relinquish any claims they may have to the others bank accounts, stocks, bonds, mutual funds, cash value of life insurance and deferred compensation plans, as listed on their respective financial affidavits. CT Page 15288
e. Liabilities
 i. Each party shall assume and pay and hold harmless the other with respect to the debts listed on his or her financial affidavit as filed and the parties shall hold each other harmless from any debts incurred by the other.
 ii. All credit cards or accounts remaining in the joint names of the parties at the time of judgment shall be canceled.
4. Attorneys Fees
The defendant shall pay to the plaintiff the sum of $5,000 for payment towards her attorneys' fees; payment to be made within 90 days from judgment.
John R. Caruso, J.